# EXHIBIT 1

# EXHIBIT 1

Person/Attorney Filing: Robert D Ryan
Mailing Address: 343 W. Roosevelt Street, #220
City, State, Zip Code: Phoenix, AZ 85003
Phone Number: (602) 256-2333
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 014639, Issuing State: AZ
Attorney E-Mail Address: rob@robertdryan.com

STATE OF ARIZONA
DEPT. OF INSURANCE

JUL 05 2017
TIME 8:10am
SERVICE OF PROCESS

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF PIMA

Gary M. Edwards
Plaintiff(s),

V.

American Bankers Insurance Company of Florida
Defendant(s).

Case No. C20172633

HON. RICHARD E GORDON

**SUMMONS**

~~STATE OF ARIZONA
DEPT. OF INSURANCE
JUL 04 2017
TIME 8:10am
SERVICE OF PROCESS~~

To: American Bankers Insurance Company of Florida

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1. A lawsuit has been filed against you. A copy of the lawsuit and other related court paperwork has been served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Office of the Clerk of the Superior Court, 110 West Congress Street, Tucson, Arizona 85701 or electronically file your Answer through AZTurboCourt at www.azturbocourt.gov.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If the papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS, not counting the day of service.

12/30/2016 CAC

AZTurboCourt.gov Form Set #2215260

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of Pima       *June 01, 2017*

*Toni L. Hellon*
Clerk of the Superior Court

By: *Alan Walker*
    Deputy Clerk



AZturboCourt.gov Form Set #2215260

12/30/2016 CAC

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
6/1/2017 1:59:42 PM
BY: ALAN WALKER
DEPUTY

Robert D. Ryan – 014639
*LAW OFFICES OF*
*ROBERT D. RYAN, P.L.C.*
343 W. Roosevelt Street, Suite 220
Phoenix, AZ 85003
p. (602) 256-2333
f. (602) 256-2334
e-mail: *rob@robertdryan.com*
*Attorney for Plaintiff*

Case No. C20172633
HON. RICHARD E. GORDON

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| GARY M. EDWARDS, an unmarried man, | |
| Plaintiff, | Case No. |
| v. | **COMPLAINT** |
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a foreign corporation; JOHN and JANE DOES I-X; and BLACK and WHITE BUSINESS ENTITIES I-X, | **(Breach of Contract; Insurance Bad Faith)** |
| Defendants. | |

Plaintiff GARY M. EDWARDS, for his Complaint against Defendants, hereby alleges as follows:

### JURISDICTIONAL ALLEGATIONS

1. Plaintiff Gary M. Edwards (hereinafter "Edwards") is an unmarried man and legal resident of Arizona.

2. At all times material to this Complaint, Edwards owned a manufactured home located at 13520 E. Benson Highway, in Vail, Arizona 85641. That property was insured by Defendant American Bankers Insurance Company of Florida through Policy No. MHA33973209 (hereinafter the

1

"Insurance Policy").

3. Plaintiff is specifically named as an insured in the Insurance Policy and/or defined as an insured pursuant to the terms and conditions thereof.

4. At all times material to this Complaint, American Bankers Insurance Company of Florida (hereinafter "American") was, and remains, an foreign corporation authorized to do and doing substantial business in the State of Arizona, and authorized to do and doing substantial business in Pima County, Arizona.

5. Defendants John and Jane Does I-X and Black and White Business Entities I-X are fictitious individuals and entities affiliated with the named Defendant that Plaintiff believes may have some responsibility and/or liability with respect to the allegations made in this Complaint. The names of such Defendants are currently unknown to Plaintiff and, once those true names are ascertained, Plaintiff will amend this pleading to specifically name such individuals or entities as Defendants.

6. Plaintiff's claims for relief meet the jurisdictional requirements of this Court, and in light of the allegations herein, jurisdiction and venue are proper in Arizona Superior Court, in an for the County of Pima.

7. Plaintiff demands a trial by jury as to all issues raised in this Complaint.

**GENERAL ALLEGATIONS**

8. Plaintiff incorporates by this reference all allegations made in the preceding paragraphs of this Complaint.

9. On or about June 9, 2015, Edwards's home on E. Benson Highway experienced a fire, which caused significant and widespread damage to the entirety of the residence. The excessive heat and smoke from the fire, along with the water used in the suppression effort, rendered the dwelling structure a total loss.

2

10. Edwards girlfriend and significant other of 23 years, Darcel Lowe, was at home at the time of the fire and died during its occurrence.

11. Edwards reported an insurance claim to American contemporaneous to the fire's occurrence. American assigned the loss a claim number, denoted as 00101804492 (hereinafter referred to as the "Edwards Fire Claim").

12. American's assigned adjuster, Dennis Cricones, conducted an initial inspection of the fire damages on or about June 11, 2015.

13. At the conclusion of that inspection, Mr. Cricones advised Edwards that he would prepare an estimate and report for American over the next few days, and it would then make payment to him based upon his estimating figures.

14. American then issued Edwards a $1,500 advance relating to his anticipated additional living costs, and also advanced an additional sum of $5,000 toward the fire damages.

15. After this initial inspection, the Edwards Fire Claim languished for more than nine months.

16. American did not make any benefit payments to Edwards relevant to his claim damages until late-March 2006.

17. Over that nine month delay, Edwards called his adjuster to complain on different occasions. The only response Edwards received was a smattering of form letters indicating that his claim was being evaluated.

18. On or about March 25, 2016, American finally provided Edwards its estimate for the damages to his home. In that estimate, American calculated repair costs at $29,893.47 on a replacement cost basis and actual cash value damages at $24,019.49. After applying Edwards' deductible, American issued him a check in the amount of $23,519.49.

3

19. Edwards found the estimate outrageous and shockingly low, nowhere near what it would cost to replace his home.

20. Also, American had actually taken the position that the house was repairable on the cheap, despite the widespread and pervasive damage that rendered it a total loss.

21. The estimate from American had also neglected entire scopes of work that would have been necessary in repairing the home to pre-loss condition.

22. On or about June 18, 2016, Edwards hired the services of JK McDougall Inc. to serve as his public adjuster in presenting his claims to American.

23. Upon their first inspection of the home on E. Benson Highway, the public adjusters immediately recognized that American had butchered its adjusting responsibilities with respect to the Edwards Fire Claim.

24. American had "low-balled" its dwelling loss assessment by tens of thousands of dollars, neglecting entire scopes of work that were necessary in returning Edwards's property to its pre-loss condition, and had delayed its assessment of the loss for months on end.

25. The public adjusters assessed claim damages on their own through the presentment of a dwelling estimate, submitted to American on or about July 19, 2016. Therein, the value of Edwards's dwelling loss was assessed at $140,802.13 on a replacement cost basis, and after the reasonable assessment of depreciation, $115,125.94 on an actual cash value basis. This was more than $110,000 in excess of what American was willing to pay toward the dwelling claim damages.

26. Under the Insurance Policy, Edwards had $94,680 in policy limits with respect to his dwelling coverage.

27. At the time of submitting the proof of loss, the public adjusters demanded the payment of the remaining balance of Edwards' dwelling policy limits in the amount $71,160.51.

28. Within just a few days of Edwards' July 2016 policy limits demand, Mr. Cricones represented to public adjuster John McDougall that American had capitulated, and it would pay the remaining balance of the dwelling coverage. Despite the public adjuster's pleas for this to immediately occur, it took American an additional three months to make that payment.

29. On October 31, 2016, American finally paid to Edwards what it deemed to be its final payment on the dwelling loss in the amount of $71,160.51. That payment was made more than 16 months after the fire had occurred.

30. In February, 2017, American made an additional, supplemental payment toward Edwards' personal property claim in the amount of approximately $11,000.

31. Over the course of the approximate 20 months that American actively adjusted the Edwards Fire Claim, it engaged in patent insurance bad faith and unreasonable adjustment practices through the following partial list of misconduct:

   a. Failing to conduct adequate or reasonable investigations;

   b. Providing "low-ball" replacement cost estimates and benefit payments to Plaintiff, knowing full well that such payments could not possibly result in the restoration of Edwards's home to pre-loss condition;

   c. Failing to reasonably respond to Edwards's different demands for payment, revised costs estimates and/or demands for action in a reasonable or timely manner;

   d. Delaying in the reasonable assessment and payment of policy benefits to Edwards;

   e. Failing to pay Edwards for the totality of damages he experienced as a result of the fire;

   f. Forcing Edwards to retain a public adjuster to obtain fair payment on his respective insurance losses; and

   g. Forcing Edwards to overcome needless adversarial hurdles in his effort to obtain fair

payment on his insurance losses.

## COUNT ONE
### (Breach of Contract)

32. Plaintiff incorporates by this reference all allegations made in the previous paragraphs of this Complaint.

33. American materially breached both the specific and implied terms of the Insurance Policy through the conduct described throughout this Complaint.

34. Plaintiff complied with all terms of his Insurance Policy, and thus, American's material breaches of contract are in no manner excused or justified.

35. As a result of American's breaches of contract, Plaintiff has sustained damage to his real and personal property and other compensable damages the full extent of which will be proven at trial.

36. As a result of American's breaches of contract, Plaintiff was obligated to file this legal action and incur attorneys' fees and attendant costs to pursue his damage claims.

37. Plaintiff's breach of contract cause of action relates to a contractual agreement with American, and thus, Plaintiff is entitled to recover his reasonable attorneys' fees and costs pursuant to A.R.S. §12-341.01.

## COUNT TWO
### (Breach of the Covenant of Good Faith and Fair Dealing)

38. Plaintiff incorporates by this reference all allegations appearing in the preceding paragraphs of this Complaint.

39. Edwards's Insurance Policy contains an implied covenant of good faith and fair dealing.

40. As an insurance company, American owes special duties to Edwards pursuant to the covenant of good faith and fair dealing. Such duties are fiduciary in nature.

41. American's duty of good faith and fair dealing owed to Plaintiff includes, but is not necessarily limited to the following: the duty to investigate the subject insurance claims in a timely manner; the duty to respond to reasonable inquiries from its insured in a timely manner; the duty to conduct reasonable investigations of the reported insurance losses; the duty to pay policy benefits under the applicable insurance contract in a reasonable and timely manner; the duty to adjust the reported insurance losses in a fair and reasonable manner; and the duty to give equal consideration to its first-party insured's rights and interests.

42. American breached the covenant of good faith and fair dealing in adjusting the Edwards Fire Claim by callously engaging in a course of unreasonable conduct—as described in this Complaint—knowing that such conduct deprived Edwards of rights he was entitled to receive under his policy of insurance.

43. As a direct and proximate result of American's breach of the covenant of good faith and fair dealing, Edwards has sustained recoverable damages including, but not limited to, economic damages, damages to his real and personal property, emotional distress, loss of the use and enjoyment of his home, pain and suffering, and other recoverable damages, the specific amount of which will be proven at trial.

44. Plaintiff's insurance bad faith cause of action (breach of the covenant of good faith and fair dealing) arises out of a contractual agreement existing between American and Plaintiff. Plaintiff is therefore entitled to recover his reasonable attorneys' fees pursuant to A.R.S. §12-341.01.

## COUNT THREE
### (Punitive Damages)

45. Plaintiff incorporates by this reference all allegations contained in the above paragraphs of this Complaint.

46. American's conduct as described in this Complaint was reprehensible in nature, and done with an evil mind and the product of an evil hand. American recklessly engaged in a course of wrongful conduct that it knew would subject its insured to substantial injury.

47. American's conduct was in reckless and callous disregard of rights and interests that Edwards enjoyed under his policy of insurance, with American engaging in that conduct knowing that it was subjecting Edwards to significant hardship.

48. In light of the reprehensible nature of American's conduct, American should be assessed punitive and exemplary damages to deter such conduct in the future and set an example of American as an insurance entity.

WHEREFORE, having presented the allegations of this Complaint, Plaintiff prays for a Judgment entered against American as follows:

A. Awarding Plaintiff his economic damages caused by American's breaches of contract;

B. Awarding compensatory damages for Plaintiff's tort-related claims for relief;

C. Awarding Plaintiff interest for the untimely payment of his insurance claims pursuant to A.R.S. §20-462.

D. Awarding Plaintiff his reasonable attorneys' fees and costs pursuant to A.R.S. §12-341.01 and/or other pertinent provisions of Arizona law;

E. Awarding punitive damages against American for the reprehensible nature of its conduct;

F. Pre- and post-judgment interest with respect to Plaintiff's contract-based damages; and

G. An award or decree of any other legal or equitable remedy that the Court deems just and proper.

DATED this 1st day of June 2017.

***LAW OFFICES OF ROBERT D. RYAN, P.L.C.***

By: /s/ Robert D. Ryan
    Robert D. Ryan, Esq.
    343 W. Roosevelt Street, Suite 220
    Phoenix, Arizona 85003
    *Attorney for Plaintiff*